2024 IL App (2d) 191139
No. 2-19-1139
Opinion filed December 9, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 08-CF-3680 |
| NATHANIEL P. WISE, | ) ) | Honorable Christopher R. Stride, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justice Jorgensen concurred in the judgment and opinion.
Presiding Justice Kennedy specially concurred, with opinion.

**OPINION**

¶ 1    Defendant, Nathaniel P. Wise, appeals from the dismissal of his postconviction petition at
the second stage of proceedings. He contends that the trial court should not have dismissed the
petition and that postconviction counsel did not give him reasonable assistance because, *inter alia*,
she added and amended several claims but did not include key information, which caused those
claims to be dismissed. The State acknowledges the shortcomings in defendant's amended petition
but suggests there is no prejudice to defendant. We agree with defendant that counsel supplied
unreasonable assistance in preparing the petition and that prejudice is not required. Therefore, we
vacate and remand.

¶ 2                                    I. BACKGROUND

¶ 3     On August 25, 2008, at around 4:30 a.m., defendant and four accomplices—Ernest Hughes, Michael Reed, Paul Alston, and Romelle Graham—broke into the North Chicago home of Bernard Phillips and his girlfriend, Shirl Palmer. Palmer's two teenage children were also in the home. Some of the five robbers were armed; all of them wore masks.

¶ 4     Phillips was a known drug dealer, which was why he was targeted. The robbers entered the house, beat Phillips, and repeatedly threatened to kill him, Palmer, and her two children unless Phillips gave the men drugs and money. At some point, Phillips fought back and screamed for Palmer to "run"; during the struggle, Phillips was fatally shot twice in the chest. The robbers then fled, but Hughes left his cell phone at the crime scene.

¶ 5     Within days, all five men were arrested and began to turn on each other. Defendant gave the police a detailed written confession and sat for a recorded interview. According to him, the robbery was planned by Graham and Graham was the only person who shot Phillips.

¶ 6     Despite his confession, however, prior to trial, defendant told his attorney that he had three potential alibi witnesses. Trial counsel filed a notice naming the three potential witnesses. The notice did not identify defendant's alibi with any specificity, it did not state where defendant was at the time of the murder, and there was no offer of proof as to what any of the three alleged witnesses would testify to. *Cf.* Ill. S. Ct. R. 413(d)(iii) (eff. July 1, 1982) (providing that alibi notice must include "specific information as to the place where [the defendant] maintains he was at the time of the alleged offense"). Ultimately, no alibi was ever presented to the jury and none of the three witnesses testified at trial.

¶ 7     At defendant's trial, his accomplices Hughes and Reed testified for the prosecution. Each had previously pled guilty to home invasion and testified pursuant to plea agreements. Both

testified that defendant was armed that night and used a gun to threaten Phillips, Palmer, and her two children. Defendant's written confession and interview were also admitted. The jury found defendant guilty of first degree murder, with a firearm enhancement, and the trial court sentenced him to 47 years' imprisonment. We affirmed defendant's conviction and sentence on direct appeal. *People v. Wise*, 2013 IL App (2d) 120147-U.

¶ 8    Defendant filed a *pro se* postconviction petition in 2014 alleging that he was actually innocent of Phillips's murder. The petition raised additional evidentiary claims as well, but his petition primarily relied on the supposed recantations of Hughes and Reed. An affidavit from Hughes, however, was the only evidence attached to the petition; there was no affidavit from Reed. Hughes's affidavit stated that he implicated defendant only because the detectives "threaten[ed] and physically beat[ ] [him,]" "made promises that [he] would be let go," and testified against defendant "because the State gave [him] a deal" and told him "this is the only way [he] would be able to see the streets again." The trial court found the petition sufficient to survive a first-stage dismissal and appointed postconviction counsel for second-stage proceedings. See 725 ILCS 5/122-4 (West 2014).

¶ 9    Defendant's postconviction counsel filed an amended petition on his behalf in 2017 and filed a second amended petition in 2018. For the reader's convenience, going forward, we refer only to the 2018 amended petition. While the amended petition raised new claims, which we discuss in more detail below, it largely rehashed defendant's "alibi" defense or actual-innocence claim. The amended petition incorporated Hughes's 2014 affidavit and included a 2017 affidavit from Alston. Alston's affidavit related an unspecified time when he heard Hughes crying and Hughes saying "his hand was forced" to testify against defendant because Hughes was scared that

"Pochiano"[1] (an alias for Graham) would harm Hughes's sister. The petition also alleged that trial counsel was ineffective for "making no attempts to locate" the three supposed alibi witnesses and "for failing to pursue the alibi *** defense at trial." The amended petition did not state what defendant's alibi would have been, and there was no additional evidence suggesting what those witnesses would have testified to. The amended petition argued that Hughes's and Alston's affidavits "indicate that the [defendant] is innocent of the charges and that any statements to the contrary were a result of coercion by the police." This is the entirety of the actual-innocence claim in defendant's amended petition.

¶ 10    The amended petition also asserted that appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred in not allowing trial counsel to examine the subpoenaed personnel records of the lead detectives because both detectives had "disciplinary issues." In addition to several new claims, the amended petition asserted that trial counsel was ineffective for failing to move for a substitution of judge, that the trial court erred in "forcing" defense counsel to tender defendant's medical records to the State, that trial counsel was ineffective for failing to "obtain copies of the field notes of any police officers involved in the case," and that trial counsel was ineffective for failing to "present mitigation at sentencing." Along with the petition, counsel filed a certificate of compliance under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 11    The State filed a motion to dismiss, and the trial court heard arguments. Ultimately, the court issued a 17-page memorandum decision that granted the State's motion. The court's order noted that, while some of the claims in the amended petition were "sparse," all of them were

---

[1]The name appears to be spelled "Pochiano" in Alston's handwritten affidavit, but it is referenced as "Puchiana" in an officer's testimony at trial and defendant's opening brief on appeal.

meritless, and it therefore found that defendant had not made a substantial showing of a constitutional violation. Defendant timely appealed.

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, defendant maintains that his amended petition should not have been dismissed, because he made a substantial showing of actual innocence. Alternatively, defendant contends that postconviction counsel provided unreasonable assistance by failing to attach additional evidence to the petition, or by "put[ting] out unsupported conclusory claims." Defendant also contends that postconviction counsel failed to properly raise defendant's claims regarding his motion for substitution of judge, the officers' field notes, the detectives' personnel records, defendant's medical records, and trial counsel's failure to "present mitigation" at sentencing.

¶ 14    We note that our decision in this case was held pending our supreme court's decisions in *People v. Addison*, 2023 IL 127119, and *People v. Agee*, 2023 IL 128413. After those decisions were issued, the parties submitted supplemental briefing addressing each decision, at our request. We determine that postconviction counsel failed to give defendant the benefit of reasonable assistance by failing to make necessary amendments to the petition. Thus, we vacate and remand.

¶ 15    Although there is no constitutional right to counsel in collateral proceedings (*Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *People v. Moore*, 189 Ill. 2d 521, 541 (2000)), indigent defendants have a statutory right to counsel in second-stage postconviction proceedings (725 ILCS 5/122-4 (West 2022)). "Counsel is appointed not to protect postconviction petitioners from the prosecutorial forces of the State but to shape their complaints into the proper legal form and to present those complaints to the court." *Addison*, 2023 IL 127119, ¶ 19; *Agee*, 2023 IL 128413, ¶ 44; *People v. Suarez*, 224 Ill. 2d 37, 46 (2007); *People v. Johnson*, 154 Ill. 2d 227, 237-38 (1993); *People v. Slaughter*, 39 Ill. 2d 278, 285 (1968).

¶ 16    Under this framework, postconviction counsel must provide "reasonable assistance," which includes compliance with Rule 651(c). *People v. Custer*, 2019 IL 123339, ¶ 32; *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). Rule 651(c) requires that postconviction counsel (1) consult with the petitioner to ascertain his contentions of deprivation of constitutional rights, (2) examine the trial record, and (3) make "any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of [the] petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). The duty of reasonable assistance extends to all additional claims identified and added by postconviction counsel to a *pro se* petition. *Agee*, 2023 IL 128413, ¶ 46.

¶ 17    Counsel's filing of a Rule 651(c) certificate of compliance creates a *rebuttable* presumption of reasonable assistance. *Addison*, 2023 IL 127119, ¶ 21. But if the record shows that counsel failed to provide reasonable assistance, then counsel's certificate was unwarranted and we cannot honor it. *Id.* The defendant may establish unreasonable assistance by, *inter alia*, demonstrating that postconviction counsel did not make all necessary amendments to the *pro se* petition, including those necessary to overcome procedural bars. *Id.*

¶ 18    At the second stage, when assessing whether the allegations in a petition make a substantial showing of a constitutional violation, all well-pleaded facts are taken as true but nonfactual and nonspecific assertions are patently insufficient. *People v. Rissley*, 206 Ill. 2d 403, 412 (2003). That does not mean that postconviction claims, filed with the assistance of counsel, must " 'make the petition's allegations factually sufficient to require the granting of relief' " (*Agee*, 2023 IL 128413, ¶ 55 (quoting *People v. Stovall*, 47 Ill. 2d 42, 46 (1970))) or else counsel will be deemed inadequate. But counsel must still shape the petitioner's claims into the appropriate legal form. And, regardless of whether counsel amends a defendant's *pro se* claims, or whether counsel adds new claims to the amended petition, counsel's assistance must be reasonable and consistent with

Rule 651(c). See *id.* ¶¶ 44-46.

¶ 19    We determine that "counsel's Rule 651(c) certificate's presumption of reasonable assistance" was rebutted when counsel "failed to make amendments to the petition *** for an adequate presentation of [defendant's] contentions." *People v. Urzua*, 2023 IL 127789, ¶ 69. Here, the claims in the amended petition were woefully incomplete and were dismissed due to their incompleteness. For example, the claim that trial counsel should have presented an alibi defense logically required—at a minimum—a statement or an offer of proof about where defendant supposedly was at the time of the crime. Likewise, the claims that trial counsel should have filed a motion for substitution of judge should have stated whether it was for substitution for cause or as a matter of right (see 725 ILCS 5/114-5(c), (d) (West 2022)), and, of course, if it was for cause, what the grounds would have been for substitution. The claim regarding the officers' field notes and the detectives' personnel files logically required a statement of what specific information in those documents was relevant and how it could have been admitted at trial. Similarly, the claim regarding defendant's medical records fails to recite what information was damaging or prejudicial to defendant, let alone how tendering them to the State impacted his trial in any way. And finally, while trial counsel did not present any mitigation evidence at sentencing, the amended petition does not identify *any* evidence that trial counsel could have or should have presented.

¶ 20    A petition that fails to allege basic, specific facts to support its general claims leaves the trial court with "virtually nothing *** to take as true at the second stage." *People v. Dixon*, 2018 IL App (3d) 150630, ¶ 20. Despite the State's best efforts to minimize the deficiencies in defendant's amended petition, they were obviously quite significant. The fact that counsel amended defendant's *pro se* claims, and added claims to the amended petition, reveals that counsel believed they had at least some merit, as counsel has an ethical obligation not to advance frivolous

or spurious claims. *People v. Kuehner*, 2015 IL 117695, ¶ 15; *People v. Greer*, 212 Ill. 2d 192, 205 (2004). And, accordingly, if counsel felt these claims lacked merit, she was obliged to omit them altogether. *Dixon*, 2018 IL App (3d) 150630, ¶ 22. But by including them, and by implying (as an officer of the court) that they were valid, counsel raised the specter of constitutional errors in defendant's criminal proceedings without any substance to support it. In other words, "[b]ecause the petition failed to allege the basic elements of the claims it raised, the petition was not in an appropriate legal form to present the defendant's claims to the court." *Id.* ¶ 16.

¶ 21    As *Agee* instructs, it does not matter whether the deficient claims have roots in the defendant's *pro se* claims or were added by counsel. *Agee*, 2023 IL 128413, ¶ 46. We consider the amended petition and its certificate to determine counsel's compliance with Rule 651(c) at the second stage. Here, as in *Addison*:

> "[T]he trial court advanced the petition to the second stage because it determined that it stated the gist of a meritorious claim. Postconviction counsel reviewed the petition and determined that [several additional] claims were worth pursuing. However, counsel failed to shape the claims into the proper form. We fail to see how it can be reasonable assistance of counsel for an attorney to identify claims worth pursuing but then fail to shape them into proper form." *Addison*, 2023 IL 127119, ¶ 26.

We determine that defendant has clearly rebutted the presumption of postconviction counsel's reasonable assistance.

¶ 22    When we encounter unreasonable assistance at the second stage, remand for a new second-stage proceeding is required. *Id.* ¶ 34. The petitioner need not make an additional showing of prejudice, and the error cannot be minimized as harmless. *Id.* ¶ 33. Our supreme court "has consistently held that remand is required where postconviction counsel failed to fulfill the duties

2024 IL App (2d) 191139

of consultation, examining the record, and amendment of the *pro se* petition, regardless of whether the claims raised in the petition had merit." *Suarez*, 224 Ill. 2d at 47; see *People v. Smith*, 44 Ill. 2d 272, 277 (1970) ("[W]e are constrained to disregard the insufficiency of defendant's post-conviction petitions and remand the matter to the circuit court to give him an opportunity, with the assistance of counsel, to present his case ***.").

¶ 23  The special concurrence appears to fault us for relying more on *Addison* than *Agee*. While that is largely a matter of perspective, for context, we note that *Agee* clarified that the obligation of reasonable assistance attaches regardless of whether the claim was added or amended from the *pro se* petition. See *Agee*, 2023 IL 128413, ¶¶ 44-46. After announcing that holding, however, the court turned its attention to analyzing whether the defendant in that case had actually rebutted postconviction counsel's Rule 651(c) certificate and determined that the defendant had *not*. See *id.* ¶¶ 47-66. The court noted that, while the defendant was correct that counsel had failed to allege an essential element of the postconviction claim, the claim itself included the only evidence counsel could have offered on that single issue—the petitioner's 70-page memorandum and affidavit regarding what trial counsel had told him and his decision to plead guilty to first degree murder. See *id.* ¶ 56 ("postconviction counsel added evidentiary support by including petitioner's statement to police and petitioner's affidavit; thus, to the extent possible, postconviction counsel affirmatively pled petitioner's claim regarding a second degree murder defense"). In contrast, here, we have noted a serial lack of evidence and pleading deficiencies with respect to multiple claims in the amended petition. So, while *Agee*'s holding helps us to resolve the case at hand, it is, in that respect, factually distinct.

¶ 24                                III. CONCLUSION

¶ 25    We note that defendant requests that we order the trial court to appoint him new counsel. We decline that request, "because the circuit court can only make one statutory appointment" for an indigent defendant. *Urzua*, 2023 IL 127789, ¶ 69; 725 ILCS 5/122-4 (West 2022). Should defendant wish to discharge his appointed counsel, he may inform the trial court on remand. For these reasons, the judgment of the circuit court of Lake County is vacated and this case is remanded for new second-stage proceedings.

¶ 26    Judgment vacated; cause remanded.

¶ 27    PRESIDING JUSTICE KENNEDY, specially concurring:

¶ 28    I agree that defendant's postconviction counsel failed to provide reasonable assistance in developing several claims in defendant's amended petition and that we must vacate and remand for new second-stage postconviction proceedings. See *Agee*, 2023 IL 128413, ¶¶ 44-46 (explaining that Rule 651(c)'s duty of reasonable assistance applies to claims added by counsel). However, I write separately because I disagree with the majority's direct comparison of this case to *Addison*. Contrary to the bracketed material in the majority's quotation (*supra* ¶ 21), the claims at issue in *Addison* were not additional claims pled for the first time by postconviction counsel at the second stage. Rather, in *Addison*, postconviction counsel amended five of the claims made in the *pro se* petitioner's initial complaint and, in amending those five claims, made them worse by removing any reference to the ineffective assistance of appellate counsel, thus reintroducing a procedural bar to the petitioner's claims. *Addison*, 2023 IL 127119, ¶¶ 24, 30 (postconviction counsel reviewed the 15 claims in the *pro se* petition and determined that 5 of those claims were worth pursuing, "but she did not shape them into proper form" and instead "made the *pro se* petition worse"). This is not a case in which postconviction counsel made a petitioner's original claims worse. Rather, most of the defectively pled claims here were added by postconviction counsel for the first time at

the second stage, and, as the majority correctly concludes, counsel failed to adequately develop or support those additional claims. Accordingly, I would decide this case on the application of *Agee*, which extended postconviction counsel's Rule 651(c) duties to new claims added by counsel at the second stage of postconviction proceedings. *Agee*, 2023 IL 128413, ¶ 46 (noting the possible difficulty in distinguishing between amended versions of the petitioner's claims and claims added by postconviction counsel).

¶ 29    Further, I write separately to emphasize that postconviction counsel also has a general obligation to allege sufficient facts when adding a new claim to the *pro se* petition. See 725 ILCS 5/122-2 (West 2022) ("The petition shall *** clearly set forth the respects in which petitioner's constitutional rights were violated" and "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached."). On remand for new second-stage proceedings, counsel should allege facts to support additional claims if such facts exist, as well as comply with the Post-Conviction Hearing Act's pleading requirement to attach evidence or state why evidence is not attached (725 ILCS 5/122-2 (West 2022)); if there is no merit or support for the additional claims, the additional claims should be omitted. See *People v. Greer*, 212 Ill. 2d 192, 205 (2004) (Rule 651(c) does not require that postconviction counsel advance frivolous or spurious claims).

*People v. Wise*, **2024 IL App (2d)** 191139

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 08-CF-3680; the Hon. Christopher R. Stride, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Jessica D. Ware, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eric F. Rinehart, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and Lynn M. Harrington, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |